UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL KARMOL,

    Plaintiff,

v.                                    Case No.  1:17-CV-262

OCWEN LOAN SERVICING, LLC,        HON. GORDON J. QUIST
et al.,

    Defendants.
_____/

## OPINION REGARDING DEFENDANT OCWEN'S MOTION TO DISMISS

Plaintiff, Michael Karmol, filed a complaint against Defendants, Ocwen Loan Servicing, LLC, Karessa Rollins, and Trott & Trott, P.C., in the Ingham County Circuit Court on or about February 22, 2017.  Karmol alleged state-law claims of (1) common law fraud; (2) innocent misrepresentation; (3) breach of contract; (4) conversion; (5) tortious interference with business relationship or expectancy; (6) unfair trade practices (violation of the Michigan Consumer Protection Act (MCPA)); and (7) injunctive relief, declaratory relief, and quiet title.  Defendant Ocwen removed the case to this Court on March 20, 2017, alleging diversity of citizenship and federal question jurisdiction as bases for removal jurisdiction.  On June 20, 2017, the Court denied Karmol's motion to remand based on lack of subject matter jurisdiction.  (ECF No. 14.)

Ocwen moves to dismiss Karmol's complaint, arguing that Karmol's claims are barred by the doctrines of res judicata and collateral estoppel and otherwise fail on a number of different grounds.  Karmol has filed a response, and Ocwen has filed a reply.  The motion is thus ready for decision.[1]

---

[1] Although Ocwen has requested oral argument, the Court finds oral argument unnecessary as the briefs adequately present the issues and arguments.

For the reasons that follow, the Court will grant Ocwen's motion and dismiss Karmol's complaint.

**I. BACKGROUND**

This case is Karmol's second effort to block Ocwen from foreclosing on a mortgage on Karmol's real property. On December 11, 2016, this Court granted Ocwen's motion to dismiss Karmol's first complaint. *See Karmol v. Ocwen Loan Servicing, LLC*, No. 1:16-CV-1178 (ECF Nos. 9, 10).

The Court set forth the pertinent background facts in its prior Opinion:

> On April 22, 2004, Karmol obtained a mortgage loan from GMAC Mortgage Corporation in the amount of $116,471.00. (ECF No. 1-2.) As security for repayment of the loan, Karmol granted a mortgage (the Mortgage) to Mortgage Electronic Residential Systems (MERS), as nominee for GMAC, on real property located at 4531 Don Street, Holt, Michigan 48842. (*Id.*) The Mortgage was recorded in the Ingham County Register of Deeds on May 13, 2004. On December 24, 2015, MERS assigned the Mortgage to Ocwen pursuant to a Corporate Assignment of Mortgage. (*Id.*) The Corporate Assignment of Mortgage was recorded in the Ingham County Register of Deeds on January 15, 2016. (*Id.*)
>      Karmol filed his complaint in this case on September 26, 2016. It appears that Karmol used a form complaint that he obtained from some source, possibly the internet. The complaint generally alleges that Ocwen illegally charged late fees, misapplied unspecified payments, mishandled his escrow account, and charged marked-up fees for default-related services. (ECF No. 1 at PageID.2–5.)

(Case No. 1:16-CV-1178, ECF No. 9 at PageID.170 (footnote omitted).)

Karmol filed his complaint in the instant case in state court on or about February 22, 2017, seeking, among other things, an injunction precluding Defendant Trott & Trott, P.C. (also referred to as Trott Law), from proceeding with a sheriff's sale that was scheduled to occur on February 23, 2017. (ECF No. 1-2 at PageID.106.) Karmol's instant allegations essentially concern facts that occurred in February 2017. Karmol alleges that Ocwen engaged in "dual tracking"—a lender's practice of proceeding with a foreclosure sale while the mortgagor/borrower's loan modification application is still being reviewed by the lender.

2

According to Karmol, Ocwen informed him on February 10, 2017, and February 13, 2017, that Ocwen's team was still reviewing his loan modification papers and it would be at least 30 days before a decision was made. (*Id.* at PageID.18.) Karmol further alleges that Defendant Karessa Rollins—Ocwen's agent or representative—promised that the February 23, 2017, sheriff's sale was cancelled and that Karmol would hear about his loan modification application from Ocwen's loss mitigation department. (*Id.*) Rollins also instructed Karmol to call Trott Law. Although Karmol called Trott Law, Trott Law failed to respond to Karmol's messages. (*Id.*)

## II. DISCUSSION[2]

In the prior case, the Court held that: (1) Karmol's Michigan Consumer Protection Act (MCPA) claim failed because residential loan transactions are exempt under the MCPA; (2) Karmol failed to plead the predicate acts of his RICO claim with specificity, as required by Rule 9(b); (3) Karmol's Fair Debt Collection Practices Act claim failed because his allegations were too conclusory to allege a claim; (4) Karmol's unjust enrichment claim failed because the mortgage governed the parties rights and obligations with regard to the default-related services; (5) Karmol's fraud claim did not comply with Rule 9(b); (6) Karmol's breach of contract claim based upon Ocwen's alleged misapplication of payments was based on conclusory allegations, rather than facts.

### A.    Claim and Issue Preclusion

Ocwen first argues that Karmol's complaint is barred by the doctrines of res judicata and collateral estoppel. Although Ocwen relies on Michigan law regarding the application of res judicata, "[t]he preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171 (2008); *see also* Restatement

---

[2]The Court finds it unnecessary to repeat the familiar motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) as Ocwen and Karmol both state the correct standard in their briefs.

(Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

"The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). "The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it." *Id.* "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 894 n.1 (1984). Thus, claim preclusion not only bars the parties from relitigating issues that were actually litigated, but also from relitigating issues that could have been raised in the prior action. *J.Z.G. Res., Inc.*, 84 F.3d at 214. Claim preclusion applies where the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action. *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 422 (6th Cir. 1999) (en banc) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892, 128 S. Ct. at 2171. Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in

the prior proceeding. *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir. 1996).

All of the elements of claim preclusion are present in this case, at least with regard to claims based on facts that occurred prior to the dismissal of the first lawsuit. First, this Court's prior decision was on the merits, and Karmol does not argue the Court acted without jurisdiction. Second, this subsequent action is between the same parties—Karmol and Ocwen. Third, Karmol raises several issues in the instant case that were or should have been raised in the prior case, including his allegations about fraudulent fees or late charges, Ocwen's misapplication of payments or mishandling of Karmol's escrow account, and the validity of the mortgage assignment and Ocwen's right to foreclose the mortgage. Similarly, the elements of issue preclusion are met, particularly with regard to Karmol's MCPA claim, because the Court held in the first lawsuit that the MCPA does not apply to residential loan transactions. However, neither claim preclusion nor issue preclusion bars Karmol's claims based on facts that occurred subsequent to the dismissal of the prior case, particularly with regard to Karmol's allegations regarding his loan modification in 2017.

**B.     Fraud, Innocent Misrepresentation, and Breach of Contract**

Karmol alleges claims of fraud and innocent misrepresentation as his first and second claims. In order to state a claim for fraud, a plaintiff must allege that: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *M & D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 26–27, 585 N.W.2d 33, 36 (1988). The elements of an innocent misrepresentation claim are: (1) the defendant made a material

5

representation; (2) the representation was false; (3) the representation was made as part of making a contract; (4) the plaintiff relied on the representation; (5) the plaintiff suffered an injury; and (6) the injury must have inured to the defendant's benefit. *Eaton Corp. v. Magnavox Co.*, 581 F. Supp. 1514, 1535 (E.D. Mich. 1984) (citing *United States Fid. & Guar. Co. v. Black*, 412 Mich. 99, 117-18, 313 N.W.2d 77, 84 (1981)).

The bases for Karmol's fraud and innocent misrepresentation claims are not clear. For both claims, Karmol alleges that

> the defendant made a material representation in that it held itself out as the Lender that it has all the rights of the Lender under the Agreement; and that they would notify the Plaintiff of the new identity of the Lender, if any, and are representing that they will NOT sell the Plaintiffs [sic] home. That the law and the Consent Decree prohibits dual tracking which Ocwen, Trott Law and Karessa Rollings [sic] have clearly violated. That Ocwen represented that Ocwen has the right to foreclose with the assistance of Trott law and Karessa Rollins, when the true statement is that none have the right to foreclose as the new holder and owner is Everbank, but there is no recorded information confirming that written representation. That the amounts being billed and foreclosed upon are listed in the notice, but are not true.

(ECF No. 1-2 at PageID.24–25, 31–32.) In his third claim—breach of contract—Karmol basically alleges that Ocwen breached its contract with Karmol not to sell his home if he participated in loss mitigation. (*Id.* at PageID.37.)

Karmol's fraud, innocent misrepresentation, and breach of contract claims all rely on the allegation that Ocwen promised not to foreclose the mortgage on Karmol's property. Each of these claims runs headlong into Michigan's statute of frauds—which provides that a loan modification is not enforceable unless memorialized in a writing containing an authorized signature by the lender. M.C.L. § 566.132(2); *see also Goss v. ABN AMRO Mortg. Grp.*, 549 F. App'x 466, 472 (6th Cir. 2013). Karmol's claims, which are based on an alleged oral promise by Ocwen's agent, Karessa Rollins, would require the Court to enforce an oral promise or representation, contrary to the statute of frauds. The lack of a signed writing preludes such claims. *See Trombley v. Seterus Inc.*, 614 F.

6

App'x 829, 833–34 (6th Cir. 2015); *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *5 (W.D. Mich. Mar. 25, 2011) (holding that the plaintiffs' silent fraud, intentional misrepresentation, and negligent misrepresentation claims based on the defendant's representations concerning modification of their mortgage were barred by the statute of frauds).

Accordingly, Karmol's fraud, innocent misrepresentation, and breach of contract claims must be dismissed as barred by the statute of frauds to the extent they rely on oral promises. Moreover, as the Court noted in its June 20, 2017, Opinion and Order Denying Motion to Remand, Karmol may not rely on the consent judgments entered in the National Mortgage Settlement cases for a private right of action, as he has no standing to assert a "dual tracking" claim either under those consent judgments or the Dodd-Frank Act.

**C.     Conversion**

Karmol's claim for conversion—alleged as his fourth claim—is subject to dismissal because Karmol fails to plead sufficient facts to satisfy the *Twombly/Iqbal* pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

> Under Michigan law, conversion
>
> consists of any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein[,] . . . [and] may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party.

*Dep't of Agric. v. Appletree Mktg., LLC*, 485 Mich 1, 13–14, 779 N.W.2d 237, 244–45 (2010) (internal quotation marks and footnotes omitted). "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted by plaintiff to his care." *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 915 (W.D. Mich. 2010) (citing *Garras v. Bekiares*, 315 Mich. 141, 147–48, 23 N.W.2d 239, 242 (1946)).

Karmol's only allegation regarding Ocwen's act of conversion is that Ocwen is "STEALING AND/OR EMBEZZLING PLAINTIFF'S property in the form of money from the Plaintiff, by billing and holding itself out as the Lender when the true identity of the Lender was known only to MERS and Defendant AND by collecting money for an entity (Ocwen) who has no interest in the subject note and mortgage."[3]  (ECF No. 1-2 at PageID.39 (capitals in original).)  Karmol does not allege that he entrusted Ocwen with money that Ocwen was obligated to return to him, nor does he allege specific facts supporting his conversion claim.  Instead, Karmol relies solely on labels and conclusions—the type of allegations that are insufficient to state a claim. *Twombly*, 550 U.S. at 555, 129 S. Ct. at 1964–65.

### D.    Tortious Interference with a Business Relationship or Expectancy

In his fifth claim, Karmol alleges that Ocwen tortiously interfered with Karmol's business relationship or expectancy, the elements of which are:

> (1) the existence of a valid business relationship or expectancy that is not necessarily based on an enforceable contract; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach of termination of the relationship or expectancy; and (4) resulting in damage to the party whose relationship or expectancy was disrupted.

*Ajuba Int'l, LLC v. Saharia*, 871 F. Supp. 2d 671, 690 (E.D. Mich. 2012) (citing *Health Call of Detroit v. Atrium Home & Health Care Servs.,Inc.*, 268 Mich. App. 83, 90, 706 N.W.2d 843, 849 (2005)).  In addition, a plaintiff alleging an intentional interference claim "must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Feldman v. Green*, 138 Mich. App. 360, 378, 360 N.W.2d 881, 891 (1984).

---

[3] To the extent Karmol alleges that Ocwen lacks an interest in the mortgage because it was separated from the note, such claim lacks merit.  *See Yuille v. Am. Home Mortg. Serv., Inc.*, 483 F. App'x 132, 135–36 (6th Cir. 2012) (noting that "Michigan courts have upheld the validity of MERS mortgages").

Karmol's tortious interference claim fails for the same reason his conversion claim fails: Karmol alleges labels and conclusions without supporting facts. First, Karmol alleges that he had a contract or expectancy with Ocwen. (ECF No. 1-1 at PageID.41.) However, it is settled law that the plaintiff must show that "the defendant was a 'third party' to the contract or business relationship." *Reed v. Mich. Metro Girl Scout Council*, 201 Mich. App. 10, 13, 506 N.W.2d 231, 233 (1993) (citing *Dzierwa v. Mich. Oil Co.*, 152 Mich. App. 281, 287, 393 N.W.2d 610, 613 (1986)). By Karmol's own admission, Ocwen was not a "third party" to the contract or expectancy. *See Hewitt v. Bank of Am. NA*, No. 1:13-CV-310, 2013 WL 3490668, at *11 (W.D. Mich. July 11, 2013) ("Bank of America is a party to the contract because First Place Bank assigned its interest to MERS, which then validly assigned its interest to Bank of America."). In addition, Karmol fails to allege that Ocwen (or any other Defendant, for that matter) intentionally committed a per se wrongful act or performed a legal act with malice and unjustified in the law. As this Court noted in the prior case, Ocwen received a valid assignment of the mortgage from MERS, and therefore had the right to foreclose the mortgage if Karmol defaulted on his obligation to make his mortgage payments. Because it is undisputed that Karmol defaulted on his payment obligation, and that Ocwen held the mortgage by assignment from MERS, Ocwen had the legal right to foreclose. Moreover, Karmol fails to allege any fact showing that Ocwen acted with malice or for a purpose unjustified in law by seeking to foreclose the mortgage.

**E.     Injunctive Relief, Declaratory Relief and Quiet Title**

Karmol's final claim requests injunctive and declaratory relief, as well as an order quieting title in his property. For the reasons set forth above, none of Karmol's claims can succeed on the merits. Karmol's reasons supporting his request for injunctive and declaratory relief are that Ocwen engaged in dual tracking, violated the consent judgments and the Dodd-Frank Act, and committed

fraud in the enforcement and collection, and in the billing and servicing, of the note and mortgage. As already discussed, these conclusory allegations are insufficient to support Karmol's claims. In addition, as to his quiet title request, Karmol must "plead a superior interest in the property." *Facione v. CHL Mortg. Trust 2006-J1*, 628 F. App'x 919, 922 (6th Cir. 2015) (citing *Beulah Hoagland Appleton Qualified Pers. Residence Tr. v. Emmet Cnty. Rd. Comm'n*, 236 Mich. App. 546, 550, 600 N.W.2d 698, 700 (1999)).  Because Ocwen has a valid assignment of the mortgage from MERS, Karmol fails to plead that he has an interest in the property superior to Ocwen's interest.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Ocwen's motion to dismiss and dismiss Karmol's complaint with prejudice.

A separate order will enter.


Dated: July 19, 2017            /s/ Gordon J. Quist
                                GORDON J. QUIST
                                UNITED STATES DISTRICT JUDGE